IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUANITA GALVAN,<br><br>        Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>        Defendant.<br>_____ / | Case No. 08-cv-1271-JLT<br><br>ORDER REGARDING PLAINTIFF'S<br>SOCIAL SECURITY COMPLAINT |

**BACKGROUND**

Plaintiff Juanita Galvan ("Claimant" or "Plaintiff") seeks judicial review of an administrative decision denying her claim for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. Pending before the Court is Plaintiff's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner"). On August 25, 2008, Plaintiff's complaint was filed in the United States District Court for the Eastern District of California. (Doc. 1). Plaintiff filed her opening brief on May 29, 2009. (Doc. 21). The Commissioner filed his opposition brief on July 1, 2009. (Doc. 24).

1

# **FACTS AND PRIOR PROCEEDINGS**[1]

On May 11, 2004, Plaintiff filed an application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Act. AR 21, 56-58, 707-09. Plaintiff alleged that she had been under a disability since September 18, 1997, due to disabling physical problems. Id. at 56, 707. After initial denial of her request for benefits by the Agency, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 46. On April 19, 2006, the ALJ held a hearing, and on April 27, 2006, denied benefits. Id. at 18-29. Specifically, the ALJ found that Plaintiff was not disabled within the meaning of the Act. Id. at 29. The Appeals Council denied review on June 23, 2008. Id. at 6-9.

Hearing Testimony

The hearing was held on April 19, 2006. AR at 712. Plaintiff and her attorney, Sharon Kelly, appeared. Id. A vocational expert ("VE"), Susan Cleval, also testified. Id.

Plaintiff testified she was 43 years old and had an eleventh grade education but had not obtained a GED, although she was literate. AR at 716. She testified that she was five feet, three inches tall and weighed 180 pounds. Id. She was left handed. Id. at 717. Plaintiff is separated and has five children, four of whom still live at home. AR 717.

After some confusion, Plaintiff stated she had not worked since September 18, 1997. See AR at 717-18. She reported that her last job was as a seamer operator in a cannery. Id. at 720. She worked in this job for about four years. Id. The job required that she stand for 7½ hours a day and put lids into a machine which then were attached to cans. Id. at 722. Part of this job required that she lift boxes of lids, which she estimated at approximately 35 pounds. Prior to this job, she worked in the cannery as a caser. Id. at 720. This job required her to load empty cardboard boxes into machines, which in turn loaded cans into the boxes. Id. Sometimes the cans would fall out of the boxes and she would have to pick them up and put them in the boxes. Id. She was required to stand to perform this job as well. Id. Altogether she worked at the cannery for 15 years. Id. The work was seasonal, lasting from early July until the end of September. Id. at 723. During this time she

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

worked 7 days a week for about 7 ½ hours a day. Id.

Plaintiff testified that she injured her left shoulder and sprained her neck while working. AR at 723. She reported that she has pain throughout her entire body. Id. at 724. She reported that she saw only her treating physician, Dr. Suzanne Meyer and that she saw her every month for her chronic pain and fibromyalgia. Id. Her treatment consisted of physical therapy and Advil. Id. Also, she reported that she took two hot showers a day to help with the pain. Id. at 725. About two years prior to the hearing, she testified that she sought surgery for a herniated disc but the doctor she saw refused to perform an operation. Id.

Plaintiff stated she had been seen in the past by Dr. Mattice Harris for anxiety and panic attacks. AR at 728. Dr. Harris prescribed Zoloft but interfered with her ability to sleep. Id. At the time of the hearing, Plaintiff testified that she was not receiving any treatment for mental or emotional problems. Id.

Plaintiff reported that she didn't do heavy housework. AR at 725. She reported that she cleaned the counter tops and on a "good day" was able to sweep and mop. Id. She stated that she didn't cook very much because the repetitive motion required "upsets" her arms. Id. She testified that she went to church and could go grocery shopping if someone else accompanied her. Id. at 727. She reported that she tried to shop on her own but sometimes just couldn't do it. Id. at 727-28.

She testified that she was able to lift and move a gallon of milk occasionally, but if she was having a lot of pain, she couldn't lift a glass of milk. AR at 729. She reported that she was in a lot of pain three to four times per month. Id. These periods lasted between three and seven days. Id. She testified that she had difficulty walking due to pain in her pelvis and hips, especially in cold weather, but could walk about a block. Id. at 726. She stated that she could stand 8-10 minutes at a time, possibly even 15 minutes. Id. She reported that sometimes she had difficulty sitting because her legs got numb after about five minutes. Id. At other times, she was able to sit for about 45 minutes at a time. Id.

Vocational Expert Susan Cleval ("VE") also testified. She described Plaintiff's previous work as a seamer operator as heavy work under the guidelines and as "medium" work as described by Plaintiff. AR at 732. She described Plaintiff's prior work as a caser as light work. Id.

The ALJ asked the VE two hypothetical questions. In the first, he described the following functional restrictions: (1) lifting 20 pounds occasionally and 10 pounds frequently; (2) standing/walking for 6 hours in a workday; (3) sitting without restriction; (4) occasionally bending, stooping, twisting, squatting, kneeling, crawling and climbing stairs, but no climbing ladders or scaffolding; (5) being unable to work at heights or around hazardous machinery; and (6) being restricted from overhead reaching with the left upper extremity and to no more than frequent fine manipulation with the left upper extremity. AR at 732. Under this hypothetical, the VE opined that Plaintiff couldn't do her past work, but could do other light work such as that of caser operator, small parts assembly, sewing machine operator and counter clerk. AR at 733.

Under the second hypothetical, the ALJ further restricted Plaintiff to lifting 10 pounds occasionally and the ability to move small objects throughout the work day, standing/walking for no more than 30 minutes at a time and no more than two to four hours a day, sitting without limit and the same non-exertional limits propounded in the first hypothetical. AR at 733. Here, the VE opined that Plaintiff could do no "light" work but could do "sedentary" work such as table operator, pharmaceutical laborer and charge account clerk. Id. at 733-34.

Finally, under a hypothetical propounded by Plaintiff's attorney incorporating the findings of Plaintiff's treating doctor, Dr. Meyer, the VE opined that Plaintiff could not perform the jobs of table operator or pharmaceutical clerk, but was not clear about whether Plaintiff could perform the job of charge account clerk. AR at 737.

Medical Record

Plaintiff was examined by Dr. Harish Porecha in November, 1998. Dr. Porecha noted intense myofascial pain, in particular painful myofascial trigger points in the cervical, upper thoracic musculature and between the shoulder blades. AR 98. He also noted limited flexion in the neck and tenderness to palpation of the left scapula and left trapezius. Id. He diagnosed fibromyalgia of the left scapula region, primarily the serratus anterior muscle and cervical and trapezius tightness, left side. Id. at 97. He attributed her condition to her injury at the cannery. Id. at 99.

Dr. Porecha opined that Plaintiff should be precluded from heavy lifting or working with her neck flexed or extended for prolonged periods of time and from repetitive pushing and pulling. AR

98. He further opined that she could no longer perform her past work and recommended vocational rehabilitation. Id. at 99.

Progress notes from examinations of Plaintiff by Dr. Mattice Harris in 1998 and 1999, show Plaintiff was treated for anxiety/depression and insomnia. AR 116, 121, 126, 296, 298. Plaintiff also complained of back, neck and abdominal pain, but Harris noted in a November 1999 progress note that Plaintiff had a good range of motion in her shoulders with no tenderness or spasm in those areas. Id. at 116.

Plaintiff was examined by Dr. Frank Fine, M.D., D.C., in November 2002. Dr. Fine characterized her range of motion in her cervical spine as "pretty much full." AR 197. However, he noted that the range of motion in her left shoulder joint was decreased in all areas and further noted tenderness in her left cervical paraspinal musculature to trapezius, her left periscapular region and shoulder blade, and subacromium and left bicipital tendon. Id. Her right shoulder had a full range of motion and her right subacromium was minimally tender. Id. A motor exam showed her at 5/5 in her upper extremities. Id.

Dr. Fine diagnosed bursitis/tendinitis in Plaintiff's left shoulder, myofascial dysfunction in her left neck and shoulder girdle area with myospasm in the left cervical trapezius area, left periscapular strain, cervical tension cephalagia type headaches, neck strain and right shoulder tendinitis. AR at 197. He recommended that Plaintiff's undergo a corticosteroid injection in her left shoulder and a MRI of her right shoulder. Id. at 198. He opined she could no longer do her previous work and recommended vocational rehabilitation. Id.

In January 2003, Petitioner was examined by Dr. Steven Abelow, M.D., an orthopedic surgeon. AR at 182. He noted that impingement sign on the right was negative but on the left was positive. Id. He found no paracervical muscle spasm, no trigger points, no complaints of lower back pain and a normal Electromyographic Study ("EMG") and nerve conduction velocity in the left upper extremity and back. Id. He diagnosed cervicothoracic strain. Id. He opined she could not return to her previous work and recommended vocational rehabilitation. Id.

Plaintiff was examined again by Dr. Porecha in March 2003. AR 181. He noted her description of her symptoms, telling him her legs were fine but that she had swelling in her left neck

up to her head and down to her bra area in the posterior aspect of her body and shoulder near her pectoral region and into her left hand. Id. at 183. She indicated that the left side of her body, primarily the torso "numbs up." Id. She reported that she had trouble washing her hair, and that her neck felt very tight which prevented her from looking down. Id. Also, she stated that she can't go back to work. Id.

When he assessed her subjective factors, Dr. Porecha noted: (1) her neck pain is "constant and minimal which intermittently becomes slight to moderate in intensity; (2) she has constant minimal to slight pain in the left shoulder which frequently becomes slight and intermittently moderate; and (3) her headaches are occasional with slight to moderate pain. AR at 189. Objectively, he found "some increased symptoms with motion of the left shoulder and cervical spine" and noted positive impingement sign as outlined in Dr. Abelow's examination. Id. Dr. Porecha further stated his belief that "[h]er condition has taken a turn for the worse since she was last seen" particularly regarding her left shoulder and neck. Id. He opined that she should be precluded from heavy lifting and from working with her neck flexed or extended for long periods of time, and that she was precluded from pushing and pulling, as well as prolonged reaching and rapid rotation of her neck. He reiterated his opinion that she should receive vocational rehabilitation as he had previously recommended. Id. at 190. In a follow-up report dated November 19, 1983, Dr. Porecha noted that an MRI of her cervical spine revealed a disc herniation at T3-4. Id. at 180.

After being referred by her treating physician, in December 2003, Plaintiff was examined by neurosurgeon, Dr. Dikran Bairanmian. AR at 237. Dr. Bairanmian noted that her neck was supple with minimal tenderness on the left side. Id. at 238. He stated her extremities had a full range of motion with no clubbing, cyanosis or edema. Id. He noted some tenderness in the left shoulder. Id. He also noted her cranial nerves were normal, her motor function was at 5/5 and her sensory function was normal to light touch and pinprick. Id. He diagnosed neck/left upper extremity pain. Id.

In a December 23, 2003 follow-up, Dr. Bairanmian noted that Plaintiff ambulated without difficulty. AR at 235. He interpreted an X-ray as showing only minimal degenerative change, noting a "small thoracic disc protrusion at T3-4 which is of no clinical significance." Id. He recommended referral to a pain management specialist and discharged her from routine neurosurgical follow-up.

Id.

In a March 25, 2004 exam, Dr. Fine also noted that Plaintiff's MRI revealed a disc herniation at T3-4 causing some cord compression. AR at 192. He indicated he wanted to get a consultation from another doctor concerning the herniation, stating his belief that this may be causing many of her symptoms. Id.

In January 2005, Plaintiff was examined by Dr. S.K. Madireddi on behalf of the Social Security Administration. In her report, Dr. Madireddi noted Plaintiff's neck was positive for Spurling's sign on the left side with pain as well a paresthesias over the left shoulder and outer border of her left upper extremity. AR at 200. Dr. Madireddi noted tenderness in Plaintiff's shoulder girdle muscles, levator scapular, rhomboidius major and minor and trapezius. Id. She stated the entire area was difusely tender, consistent with fibromyalgia. Id. She noted tender areas on the right side as well and diagnosed limited fibromyalgia. Id.

Dr. Madireddi found further that Plaintiff's left shoulder strength was 4/5, her left elbow and her hand were normal and that her right upper extremity was normal also. AR at 200. She noted normal fist formation and grip on the right hand but decreased 25% on the left with slightly decreased fine finger movements. Id. She noted tenderness in the spine from T3-7 but noted that Plaintiff had a normal gait. Id. She attributed Plaintiff's fibromyalgia to her work injury and also diagnosed cervical spine strain. Id. at 201. She concluded that Plaintiff had the residual functional capacity to sit six hours in an eight-hour workday with appropriate breaks, that she could stand/walk six hours in a day, lift 10 pounds frequently and 15 pounds occasionally and that she could bend, stoop, kneel, crouch and crawl occasionally. Id.

Dr. David Pong reviewed Plaintiff's medical records in February 2005. AR at 211. He found the same RFC as Dr. Madireddi but also noted a limitation to frequent fingering. Id. at 203-05. A second agency consultant reviewed Plaintiff's records in July 2005, and affirmed these findings. Id. at 711.

A non-examining medical consultant filed a report in February 2005.[2] AR at 255-58. After a thorough recounting of Plaintiff's medical history, the consultant concluded Plaintiff had a "limited" form of fibromyalgia and suggested "light-sed" RFC with occasional postural limitations and some "slight" limits to her left upper extremity. Id. at 257.

Plaintiff underwent a mental examination in February 2005 by psychiatrist, Dr. Stephane Lampe. AR at 211. In his report, Dr. Lampe determined that Plaintiff had no psychiatric illness. Id. Further he opined that Plaintiff could relate and interact with supervisors, co-workers and the public, that she could maintain concentration and attention in two hour increments and that depending on the job, she could withstand the stress and pressure of an 8-hour workday on an ongoing basis. Id.

Finally, notes from Plaintiff's treating physician, Dr. Meyer, documented ongoing treatment in 2005 for anxiety, depression and her physical maladies. AR at 232, 234, 241, 242 and 243. At various examinations, Dr. Meyer noted complaints of back and shoulder pain, as well as anxiety and depression. Id. at 232, 234. Plaintiff was treated with medication, in particular Restoril, but declined other medications. Id. at 232.

Dr. Meyer filled out a Physical Capacity Form in July 2005. Recounting Plaintiff's statements to her, she stated that Plaintiff needed frequent rest periods during the day, that she could sit for no more than 30 minutes at a time, that she could stand and/or walk for only 0-2 hours at a time and for no more that 2-4 hours in a day, and that she was restricted in the use of her hand and fingers in repetitive motion. AR at 242. She stated that Plaintiff could lift 10 pounds occasionally, and could never climb, stoop, kneel, or crawl. Id. at 243. She stated that Plaintiff had difficulty concentrating, needed help from family to take care of her home and had trouble with everyday tasks due to her inability to focus because of pain. Id. at 241. Also, Dr. Meyer noted an inability to adapt to stress. Id.

ALJ Findings

First, the ALJ determined that Plaintiff met her insured status requirements through June 30, 2001. AR at 23. Then the ALJ evaluated Plaintiff pursuant to the customary 5-step sequential

---

[2] The name of the consultant is not evident on the report. The Court notes that Dr. Pong made his findings at this time but the Court cannot discern whether this is his report.

evaluation. After determining that Plaintiff had not engaged in substantial gainful activity since September 17, 1999 (Step 1), he noted at Step 2 that Plaintiff's "slight herniated cervical spine disc" and "possible fibromyalgia" were "severe" impairments within Agency regulations. AR at 23. However, they did not meet or exceed the level required under Agency guidelines for presumed disability (Step 3). Id. at 24.

In the fourth step of his analysis, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform work requiring her to lift 20 pounds occasionally and 10 pounds frequently; occasionally climb, balance, stoop, kneel, crouch and crawl; no more than frequent fine manipulation with the left hand; and no left-sided overhead reaching. AR at 24. Based on these findings, and the testimony of the VE, the ALJ concluded that Plaintiff could not perform her past relevant work. Id. at 27. However, the ALJ concluded at Step 5 that significant other "light" work exists in the national economy that Plaintiff could perform and, therefore, she was not disabled. Id. at 27, 29.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. E.g., Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See* Sanchez v. Sec'y of Health and Human Serv., 812 F.2d 509, 510 (9th Cir. 1987).

# **REVIEW**

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has a medically determinable and severe physical impairment (a slight herniated disc and possible fibromyalgia); (3) does not have an impairment which meets or is equal to one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) could not perform her past work as a seamer operator and caser as that job is performed in the national economy; but (5) retains the RFC to perform work related activities that would require her to lift and carry 20 pounds occasionally and 10 pounds frequently; with occasional climbing, balancing, stooping, kneeling, crouching and crawling; and that would require no more than frequent fine manipulation with the left and no left sided overhead reaching. AR at 24-25. The ALJ then determined that Plaintiff was not under a "disability" as defined in the Act. Id. at 29.

Plaintiff challenges the ALJ's determination at Step 5 of the sequential evaluation process, where an individual's ability to perform other work is assessed based on her RFC. Plaintiff raises two claims of error. First, she alleges the ALJ improperly discounted the opinion of her treating

---

[3] All references are to the 2000 version of the Code of Federal Regulations unless otherwise noted.

physician. She also asserts the ALJ improperly discounted the opinions of an examining physician and a consulting physician in finding that she retained the RFC to perform light work in the national economy.

**DISCUSSION**

Plaintiff challenges the ALJ's failure to give deference to the opinions and findings of her treating physician, Dr. Meyer, in determining her RFC. In addition, she notes that although an examining physician, Dr. Madireddi, diagnosed fibromyalgia, the ALJ discounted her diagnosis simply because he was not convinced it was supported by the criteria of the American College of Rheumatology.[4] (Doc. 21. at 5; AR at 27.)

A The ALJ Properly Discounted the Opinion of Treating Physician Dr. Meyer

The opinions of treating doctors are given more weight than the opinion of non-treating doctors. If a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); see also Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). Even if contradicted by another doctor, the Commissioner may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830.

As noted above, in July 2005, Dr. Meyer filed a form concluding that Plaintiff needed frequent rest periods during the day, could sit less than 30 minutes at a time and for no more than two to four hours in a day, could stand/walk no more than two to four hours in a day, and that she is restricted from repetitive hand motion because of pain. AR at 242. Dr. Meyer indicated also that Plaintiff could only lift 10 pounds occasionally and could never climb, stoop, kneel, crouch or crawl, and, at best, could reach only occasionally. Id. at 243.

In according no weight to Dr. Meyer's opinion, the ALJ stated that her conclusions were based upon the claimant's subjective and self-serving allegations. AR at 27. He found her report to be internally inconsistent, noting that although Dr. Meyer stated that Plaintiff could perform limited

---

[4] The ALJ also discounted the same diagnosis and functional capacity assessment rendered by Dr. David Pong, M.D., a non-examining consultant, for the same reason. AR at 27, 203-05.

11

sedentary work, she also stated that she was unable to sit for more than 30 minutes. See id. at 242, 244.

In Bray v. Commissioner of Social Security Administration, 554 F.3d 1219 (9th Cir. 2009), the court held that the opinion of a treating physician was properly discounted where it was based on the subjective complaints of the Plaintiff and the ALJ determined that those complaints were not fully credible. See id. at 1228; see also Ukolov v. Barnhart, 420 F.3d 1002, 1005-06 (9th Cir. 2005) (rejecting physicians opinion where it is based "solely on [the claimant's] own 'perception or description' of his problems");

Here, Dr. Meyer's report is predicated on the complaints voiced to her by Plaintiff. In regard to almost each finding, Dr. Meyer prefaces her conclusion by stating it is based on what Plaintiff told her. See AR at 241-43. She does not cite clinical findings or independent evidence to support her conclusions. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (finding that a brief and conclusionary form opinion which lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion). Nyman v. Heckler, 779 F.2d 528 (9th Cir. 1985) ("Conclusory opinions by medical experts regarding the ultimate question of disability are not binding on the ALJ.") This fact, along with the ALJ's determination that Plaintiff's statements concerning "the intensity, persistence and limiting effects of these symptoms" were not entirely credible,[5] see AR at 25, provide specific and legitimate reasons for discounting Dr. Meyer's conclusions that are based upon substantial evidence in the record.

B. The ALJ Improperly Discounted the Opinions of Dr. Madireddi and Other Physicians

Plaintiff also notes that the ALJ's RFC assessment is less restrictive than examining physician Dr. Madireddi. Dr. Madireddi examined Plaintiff in January 2005. She chronicled a series of maladies to Plaintiff's neck, left shoulder, upper back, et al., primarily on the left side of her torso and upper extremity and diagnosed a number of conditions including fibromyalgia, cervical spine

---

[5] Plaintiff does not challenge the ALJ's credibility finding. As a result, the Court has not addressed this issue on appeal. See Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (per curiam) (holding that when an issue is not raised before the district court, it has been waived on appeal to this court). However, if the matter is remanded, new issues may be raised before the ALJ. See Gonzalez v. Sullivan, 914 F.2d 1197, 1202 (9th Cir. 1990); 20 C.F.R. ss 404.946(b)(1), 416.1446(b)(1).

sprain, positive Spurling's sign in the neck and possible C5-6 radiculopathy. AR at 201. Based on these findings, she opined that Plaintiff could sit for six hours in a day, stand/walk six hours in a day, lift and carry 10 pounds frequently and 15 pounds occasionally, and perform activities such as bending, stooping, kneeling, crouching and crawling occasionally. Id. These RFC findings were echoed by a non-examining consultant, Dr. Pong, after his review of the medical records. See id. at 203-05.

As with a treating physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician. Lester, 81 F.3d at 830. The Commissioner must provide "clear and convincing" reasons for discounting the uncontroverted opinion of an examining physician and "specific and legitimate" reasons supported by substantial evidence in the record for discounting the opinion if controverted by another doctor. Id. at 830-31. To satisfy this burden, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes, 881 F.2d at 751.

Here, the ALJ gave Dr. Madireddi's diagnosis and functional capacity findings, as well as those of Dr. Pong, only "limited weight" because he believed their diagnosis of fibromyalgia did not satisfy the standards of the American College of Rheumatology. AR at 27. The ALJ then stated, based on his assessment of the medical record in general[6], that Plaintiff had the ability to lift and carry up to 20 pounds occasionally and, thus, could perform "light" work under the Agency guidelines. Id.; see 20 C.F.R. § 404.1567(b).

In Sarchet v. Chater, 78 F.3d 305 (7th Cir. 1996), the Seventh Circuit Court of Appeals, citing the American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee, noted that the cause or causes of fibromyalgia are unknown, that there is no cure and that the symptoms are entirely subjective. Id. at 306. The principle symptoms are "pain all over,' fatigue, disturbed sleep, stiffness, and tender spots, more precisely, 18

---

[6] The ALJ also cited a February, 2005 report filed by a non-examining medical consultant. See AR 27, 255-58. The name of the author is not clear from the document however the Court notes that this report is contemporaneous to the functional capacity assessment made by Dr. Pong in February, 2005. The Court cannot discern but believes this report may be Dr. Pong's. If so, the ALJ appears to give great weight to Dr. Pong's conclusion that Plaintiff retains the ability to perform "light/sed" work but discounts his specific functional capacity findings as well as his diagnosis of fibromyalgia. See id. at 203-05, 257.

fixed locations on the body, of which a patient must have 11 to be diagnosed with the condition. Id. To establish a positive trigger point, a patient should flinch when a particular point is pressed firmly. Id. The court noted that these symptoms are easy to fake, and further stated that although some claimants may have such a severe case of fibromyalgia as to be totally disabled from work, "most do not and the question is whether [this claimant] is one of the minority." Id. at 307.

The record indicates that Plaintiff was first diagnosed with fibromyalgia by another examining physician, Dr. Porecha, in his November 1998 record. AR at 97. Although he did not delineate the 18 trigger points specifically in his report, Dr. Porecha did opine that Plaintiff had painful myofascial trigger points in the cervical, upper thoracic musculature, greater between the shoulder blades. Id. at 98. In making this finding, Dr. Porecha cited a work by Dr. Janet Travell, M.D. entitled "Myofascial Pain and Dysfunction" which describes the trigger points "in specific patterns characteristic of each muscle." Id.

Likewise, in her report Dr. Madireddi noted numerous areas of painful tenderness, including "the shoulder girdle muscles . . ., the levator scapular, rhomboidius major and minor and the trapezius" and noted that "the entire area appears to be diffusely tender, consistent with fibromyalgia." Id. at 200. Dr. Madireddi also found "tender spots in the lumbar areas L1 to L5 in the paraspinous region as well as tender areas over the sacroiliac crests, the greater trochanters and the medial and lateral condyles of the lower extremities." She stated that"[t]he distributions of these tender areas along with [Plaintiff's] depression and insomnia would be consistent with fibromyalgia." Id.

Without more detail, the ALJ's discounting of these opinions simply because the doctors failed to checkoff or delineate the 18 trigger points identified by the American College of Rheumatology, does not satisfy the requirement of citing specific and legitimate reasons supported by substantial evidence in the record. Here, the ALJ failed to address Dr. Porecha's diagnosis of fibromyalgia while discounting the opinions of Drs. Madireddi and Pong. Moreover, the non-examining consultant's report relied upon by the ALJ to support his finding that Plaintiff had the RFC to perform "light" work in the national economy specifically, accepts the fact that Plaintiff has fibromyalgia. AR at 257. In addition, the ALJ's general citation to record evidence "between 1999

and 2003" is also lacking. See Regenniter v. Commissioner of Social Security Administration, 166 F.3d 1294, 1299 (9th Cir. 1999) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.")

As a result, the ALJ improperly discounted the RFC assessments of Dr. Madireddi and Dr. Pong and failed to address Dr. Porecha's diagnosis. In addition, the Court concludes that his RFC finding that Plaintiff could perform "light" work under the Agency guidelines is not based on substantial evidence. See 20 C.F.R. § 404.1567(b). On a more technical point, the Court notes also that the ALJ's RFC assessment for "light" work is facially deficient because he included no assessment as to whether Plaintiff is capable of sitting for six hours in an eight-hour day or whether she is capable of standing/walking for six hours in an eight-hour day. AR at 24. These findings are required for application of the guidelines.

For these reasons, the Court finds that remand to the Commissioner is appropriate. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989) [The decision to remand for further proceedings or simply to award benefits is within the discretion of the court.] If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Here, the Court finds that additional proceedings can remedy the defects noted and therefore remand is appropriate.

As noted, the ALJ has failed to support his RFC finding that Plaintiff could perform "light" work with substantial evidence. Although, his RFC finding is lacking and insufficient under the guidelines, the Court notes that most examining physicians, including Drs. Porecha and Madireddi, and a non-examining consultant, Dr. Pong, indicated that Plaintiff could perform work. In fact, the RFC findings of both Dr. Madireddi and Dr. Pong are potentially consistent with the ability to perform "sedentary" work under the guidelines. See 20 C.F.R. § 404.1567(a). For instance, in a hypothetical propounded by the ALJ based on findings consistent with the opinions of these doctors, the VE opined that although Plaintiff would be precluded from "light" work, there was other

"sedentary" work she could perform. See AR at 733-34. Therefore, remand for rehearing is appropriate. On remand, the ALJ should consider whether further development of the medical record is appropriate with regard to the findings of Drs. Porecha and Madireddi on the issue of fibromyalgia. See Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (stating that the ALJ has a duty to develop the record when there is ambiguous evidence or the record is inadequate to allow proper evaluation of the evidence).

By remanding this case, the Court does not comment on the propriety of the ALJ's ultimate conclusion that Plaintiff was not disabled. However, because the ALJ improperly discounted the findings of Dr. Madireddi and Dr. Pong and failed to support his RFC findings by specifically recounting substantial evidence in the record, remand is necessary.

## **CONCLUSION**

Based on the foregoing, this case is HEREBY REMANDED to the Secretary pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this decision. The Clerk of Court IS DIRECTED to enter judgment in favor of Plaintiff.

IT IS SO ORDERED.

Dated: **February 8, 2010**  /s/ **Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE